IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JAMES KING,

Plaintiff,

vs.

UNION PACIFIC RAILROAD CO.,

Defendant.

8:23CV267

ORDER

This matter comes before the court on Plaintiff's Motion to Exclude Dr. Holland as an expert witness. (Filing No. 74). The matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A). For the following reasons, the court finds that the motion should be granted in part and denied in part. The court concludes that portions of Dr. Holland's testimony consists of expert opinions under Fed. R. Evid. 702 that were not properly and timely disclosed and should be excluded. Dr. Holland's trial testimony will accordingly be limited to factual matters that may be within his personal knowledge and which were properly disclosed.

## I.    BACKGROUND

Plaintiff was employed as a locomotive engineer with Defendant Union Pacific in 2019 when he suffered a stroke while off duty. (Filing No. 1, at para. 32). He was subsequently treated, fully recovered, and cleared to return to work by his treating nurse practitioner and neurologist with no restrictions. (Filing No. 1, at paras. 34-35, 42). Despite those clearances, Defendant initiated its Fitness-for-Duty ("FFD") evaluation process, which is designed to help assess whether employees are medically or functionally able to perform their job duties. The FFD process typically involves a review of medical records

1

and, if necessary, an evaluation to determine whether work restrictions are necessary pursuant to Union Pacific's medical guidelines and policies. (Filing No. 1-1).

Based upon that process, Union Pacific's Associate Medical Director Dr. John Charbonneau reviewed Plaintiff's medical records and placed Plaintiff on sudden incapacitation work restrictions for a period of five years, which precluded him from working as a locomotive engineer or in any other safety-sensitive position. (Filing No. 1, at paras. 36-38, Filing No. 76-9, at 22:1-24:20). Dr. John Holland was Defendant's Chief Medical Officer at the time of Plaintiff's stroke and responsible for developing the FFD policies. Plaintiff asked for a reconsideration of Dr. Charbonneau's restrictions, and Dr. Holland, as the final decision maker, denied his request. (Filing No. 76-9, at 21:13-24:7). Plaintiff was unable to return to his position as a result of these restrictions and "concluded it would be futile to continue to seek accommodations from Union Pacific as an engineer or any other position with the company." (Filing No. 1, at para. 40). He subsequently filed suit on June 15, 2023, alleging violations of the Americans with Disabilities Act ("ADA") for disability discrimination and disparate treatment.

The court entered a Final Progression Order on March 26, 2024, which set a number of important progression deadlines, including serving initial mandatory disclosures under Rule 26(a)(1), completing written discovery and depositions, and providing for expert witness disclosures. (Filing No. 25). Plaintiff's deadline for complete expert disclosures was September 20, 2024. Upon the parties' joint motion, Defendant's deadline for complete expert disclosures was extended to October 28, 2024. (Filing No. 44).

Defendant served its first amended initial disclosures on or around May 6, 2024, and listed Dr. Holland as a potential fact witness who "may have knowledge concerning Union Pacific's fitness for duty policies and procedures, is expected to have information concerning Plaintiff's medical history provided to Union Pacific, Plaintiff's Fitness-for-Duty Evaluation(s), Plaintiff's medical restrictions, as well as information to refute the allegations of Plaintiff's Complaint." (Filing No. 76-2). Defendant later served its expert disclosures, but did not name Dr. Holland as either a retained or non-retained expert. (Filing

No. 76-4). As a result, Defendant did not provide any expert report or expert opinions of Dr. Holland with those disclosures.

The parties scheduled Dr. Holland's deposition for September 30, 2025. (Filing No. 76, at para. 6). On September 29, 2025, the day before the scheduled deposition, Defendant produced a "Declaration of Dr. Holland" which included eight exhibits totaling 628 pages, which Plaintiff alleges were not previously disclosed in discovery. (Filing No. 76-8, Filing No. 77-1, Filing No. 77-2, Filing No. 77-3). Due to this disclosure, Plaintiff rescheduled Dr. Holland's deposition for October 21, 2025. (Filing No. 76, at para. 7). On October 17, 2025, Defendant informed Plaintiff that it intended to produce an amended declaration of Dr. Holland, and they agreed to reschedule his deposition for November 4, 2025. (Filing No. 76, at para. 8). The night before the rescheduled deposition, Defendant produced the amended declaration with an additional 13-page exhibit.[1] (Filing No. 77-4, Filing No. 77-5).

The parties completed Dr. Holland's deposition as scheduled on November 4, 2025. (Filing No. 76-9). Plaintiff argues that during the deposition, Dr. Holland provided expert testimony and clearly intends to do so at trial, even though he was only disclosed as a fact witness and never disclosed as an expert witness. Based upon these representations, as well as the related declaration and disclosed exhibits, Plaintiff brings this motion to exclude Dr. Holland as an untimely disclosed expert witness.[2]

---

[1] The original declaration was entitled "Declaration of Dr. John Holland Supplementing Fed. R. Civ. P. 26(a)(2)(C) Witness Disclosure," which seemingly recognized Dr. Holland as an expert. (Filing No. 77-1). However, the amended Declaration was edited and retitled "Fed. R. Civ. P. 26(a)(3) Witness Declaration of Dr. John Holland." (Filing No. 77-4).

[2] Plaintiff filed also filed a Motion to Exclude Dr. Holland in 8:23-cv-211 *Carlton v. Union Pacific*. The parties' briefing and arguments are nearly identical in both cases, aside from factual differences relating to the plaintiff. As the court intends to rule on these motions simultaneously, the legal standard and analysis will be the same.

3

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(a) requires litigants to disclose information about their witnesses. Fed. R. Civ. P. 26(a)(2) sets disclosure requirements for expert witnesses. The rule distinguishes between "a witness who is … retained or specially employed to provide expert testimony in a case" and fact witnesses with personal knowledge of the case who possess expert knowledge. Fed. R. Civ. P. 26(a)(2). Witnesses presenting expert testimony must be specifically identified as witnesses presenting expert testimony—not as fact witnesses under Rule 26(a). "Disclosing a person as a witness and disclosing a person as an expert witness are two distinct acts." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). "For a witness retained or otherwise engaged to provide expert testimony in litigation," Rule 26(a)(2)(B) requires the witness to provide a written report, "signed by the witness, providing prescribed, detailed information." *See Johnson v. Friesen*, 79 F.4th 939, 943 (8th Cir. 2023).

For experts who are not required to provide written reports, Rule 26(a)(2)(C) requires a "considerably less extensive" summary disclosure of the opinions to be offered. *Id.* (*citing* Rule 26 advisory committee note to 2010 amendment). This second category of "hybrid witnesses" need only disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)-(D). "Although the information required under Fed. R. Civ. P. 26(a)(2)(C) is less extensive than an expert report under 26(a)(2)(B) ...the two forms of disclosure share the goal of increasing efficiency and reducing unfair surprise." *Brown v. Providence Med. Ctr.*, 2011 WL 4498824, at *1 (D. Neb. Sept. 27, 2011) (internal quotation marks omitted). Further, the deadlines for these disclosures are set by the court and must be followed. *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, 187 F.R.D. 578, 582 (D. Minn. 1999) (A magistrate judge's scheduling order '"is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.")

4

"The disclosure mandates [of] Rule 26 are given teeth by the threat of sanctions in Rule 37." *Vanderberg v. Petco Animal Supplies Stores, Inc*., 906 F.3d 698, 702 (8th Cir. 2018). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When a party does not fully comply with the expert-disclosure rules, "the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The Court's discretion is guided by "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692 (*citing Sellers v. Mineta*, 350 F.3d 706, 711-12 (8th Cir. 2003)). "[E]xclusion of evidence is a harsh penalty and should be used sparingly." *Gruttemeyer v. Transit Auth*., 31 F.4th 638, 645 (8th Cir. 2022).

### III.   ANALYSIS

A.   *Dr. Holland's Opinions Were Not Timely Disclosed*

The deadline for expert witness disclosures in this case has long expired, so the court must first determine whether Dr. Holland was properly and timely disclosed as a fact witness, or if he is an expert witness under the heightened disclosure requirements of Rule 26. As the Eighth Circuit explained, "[d]etermining whether a witness is offering an expert or lay opinion requires a case-by-case analysis of both the witness and the witness's opinion." *United States v. STABL, Inc*., 800 F.3d 476, 486 (8th Cir. 2015). On this point, the court concludes that Dr. Holland should have been disclosed, at a minimum, as a non-retained expert witness. The court agrees with Plaintiff that Dr. Holland's declaration and subsequent deposition are both replete with testimony based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Rule 701 permits lay opinion testimony only if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The rule allows a lay witness to draw common sense inferences from firsthand knowledge and to recount "relevant historical or narrative facts that the witness has perceived" when helpful to the factfinder. *United States v. Oliver*, 908 F.2d 260, 263 (8th Cir. 1990) (citations omitted). But Rule 701 draws a firm line. It "generally does 'not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness.'" *United States for Use of Donald B. Murphy Contrs. v. Travelers Cas. & Sur. Co.*, 2017 WL 2838128, at *2 (D. Neb. June 30, 2017) (quoting *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000)). The 2000 amendment to Rule 701 reinforces this limitation by seeking to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 (Notes of Advisory Committee on 2000 Amendment). A witness provides expert testimony whenever he offers opinions based on "scientific, technical, or other specialized knowledge," regardless of whether he formed those opinions before litigation. Fed. R. Evid. 701(c); *see also Musser*, 356 F.3d at 751 n.2.

Case law helps illustrate this distinction. In *United States v. STABL, Inc.*, the court permitted an EPA compliance officer to testify as a lay witness because he simply compiled and tabulated business records. The Eighth Circuit noted that his testimony primarily related to his industry experience and offered background information regarding the alleged violations at issue and held that "mere tabulation does not require scientific, technical, or other specialized knowledge." *STABL,* 800 F.3d at 487. By contrast, in *Browne v. P.A.M. Transport, Inc.,* 434 F.Supp.3d 712, 718 (W.D.Ark. 2020), the court held that testimony based on applying "methods" to "data" constituted expert testimony because the witness performed a specialized audit and drew conclusions that required technical

6

judgment. That analytical step, moving from raw information to evaluative conclusions grounded in specialized principles, marked the difference between lay and expert testimony. *Id.* Courts also recognize "hybrid" witnesses who testify as both a fact witness and an expert witness under Fed. R. Civ. P. 26. However, those witnesses must still comply with the disclosure requirements under Fed. R. Civ. P. 26(a)(2)(B) or (C) or risk exclusion of the expert testimony. *See, e.g., Florek v. Creighton University,* 2024 WL 4838927 (D.Neb. Nov. 20, 2024) (*citing Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253-54 (4th Cir. 2022)). Rule 26 thus enforces the substantive boundary established between Rule 701 and 702.

Applying those principles here, the court finds that substantial portions of Dr. Holland's Amended Declaration rely on specialized knowledge rather than lay perception. Those opinions fall within Rule 702. In particular, Dr. Holland states:

> From about 2011 through 2019, while I was Chief Medical Officer, Union Pacific used an adaptation of the FMCSA's medical standards in making fitness-for-duty determinations for workers who had strokes. A stroke is an acute vascular event that causes the death of an area of brain tissue and may result in ongoing functional impairments and health risks. The two main types of strokes are: (1) ischemic strokes caused by blockage of blood flow to a section of the brain (these are also called embolic or thrombotic strokes), and (2) hemorrhagic strokes caused by bleeding in the brain tissue (these are also called intracerebral hemorrhages). The FMCSA 2014 Medical Examiner Handbook provides medical fitness for duty guidance for commercial motor vehicle drivers who have had a stroke in the section "Acute Seizures – Structural Insult to the Brain." See Exhibit 5, pages 143-144. This section states, "Unprovoked seizures will occur within the next 5 years in 16% of all individuals with an occlusive vascular insult." An occlusive vascular insult is another name for an ischemic stroke; this occurs when a blood clot blocks arterial blood flow to a section of the brain causing insufficient oxygen to be supplied to the brain tissue (i.e., ischemia) and resulting in death of the affected brain tissue unless normal blood flow is rapidly restored…

(Filing No. 77-4, at para. 25). He further states, "[t]he risk [of having a seizure] is increased primarily in individuals with lesions associated with cerebral cortical or subcortical deficits. . . the length of time an individual is seizure free and off anticonvulsant medication is considered the best predictor of future risk for seizures." (Filing No. 77-4, at para. 26).

7

During his November 4, 2025 deposition, Dr. Holland reiterated his intention to testify to those opinions in his Amended Declaration, as well additional opinions outside of the declaration, such as why he made the FFD determination he did in his case and the reasons that "the FMCSA guidance documents on Fitness-for-Duties were valid, evidence-based and could be applied reasonably to railroad workers in safety-sensitive positions..." (Filing No. 76-9, at 14:4-15:15).

These statements do not merely recount what the FMCSA Handbook says. Dr. Holland interprets medical terminology, explains causation underlying stroke conditions, and then translates associated risks into safety implications and connects that risk to FFD determinations for safety-sensitive railroad employees. In other words, he is not merely summarizing data. He is applying his medical expertise to workplace safety policy. Like in *Browne*, this movement from simply repeating medical data and historical fact information to drawing evaluative conclusions requiring professional medical judgment qualifies this opinion as expert analysis.

The same reasoning applies to other portions of Dr. Holland's Amended Declaration as well. (Filing No. 77-4). Paragraph 15 sets forth his definition of "sudden incapacitation" and explains how he incorporated that medical concept into Union Pacific's FFD framework. That definition reflects a clinical risk assessment, not a lay observation. Paragraphs 18 and 19 describe Union Pacific's adoption of FMCSA seizure-risk guidelines and explains the medical rationale for doing so, including consultation with additional medical experts. Paragraph 20 describes Union Pacific's Medical Rules and their use in making FFD determinations, which requires interpretation of medical guidance to impose worker safety restrictions. Finally, Paragraphs 24-26 explains the adaptations of the FMCSA standards regarding workers who had strokes and how Union Pacific then applied those standards to their workers. In each instance, Dr. Holland moves beyond merely describing what the company did. He explains why certain medical risks justify specific restrictions. That explanation necessarily depends on specialized knowledge and professional medical judgment.

By contrast, Paragraphs 1 through 14, 16 through 17, as well as 21 through 23, recount Dr. Holland's role with Union Pacific, his participation in policy development, regulatory history, and factual summaries of prior railroad accidents and NTSB findings. In those sections, he generally described events, meetings, policy changes, and agency determinations within his personal knowledge. He did not interpret medical science or provide additional clinical analysis. This testimony resembles the permissible industry background and narrative testimony approved in *STABL*. It provides context to the fact finder without invoking specialized methodology. Rule 701 allows that kind of testimony because it derives firsthand experience and does not rely on scientific or specialized reasoning. And relevant to the issue of timing, that potential testimony and Dr. Holland's role as a fact witness was timely made through Rule 26 initial disclosures. His expert opinions, however, were not.

Dr. Holland's Amended Declaration clearly contains both factual narrative and medical analysis, which qualifies him as a "hybrid witness." The court concludes that his recounting of historical events and personal involvement in company decisions constitutes proper lay testimony. However, his interpretation of medical literature, definition of clinical risk concepts, evaluation of stroke and seizure probabilities, and application of those evaluations to safety-sensitive employment decisions constitute expert opinion. Accordingly, the court finds that the opinions found in Paragraphs 15, 18-20, and 24-26 of Dr. Holland's Amended Declaration contain expert testimony and were therefore subject to expert disclosure requirements under Rule 26.

B.    *Rule 37(c) Sanctions*

Because the Defendant failed to disclose Dr. Holland as an expert, it is subject to sanctions under Fed. R. Civ. P. 37(c). Plaintiff asks the court to exclude Dr. Holland's entire testimony. The court recognizes, however, that "the exclusion of evidence is a harsh penalty and should be used sparingly." *Gruttemeyer*, 31 F.4th at 645. As noted above, Rule 37(c)(1) mandates exclusion of untimely disclosed evidence unless the failure is substantially justified or harmless. To assess this, the Eighth Circuit directs trial courts to evaluate four

9

factors: "The reason for noncompliance; the surprise and prejudice to the opposing party; the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692 (*citing Sellers,* 350 F.3d at 711). After considering these factors, the court balances them against the severity of the requested sanction to reach a fair result. *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011).

### 1. Reasons For Non-Compliance

The first factor, the reason for noncompliance, strongly favors Plaintiff. Defendant offers no justification for its failure to disclose Dr. Holland as an expert. Instead, Defendant asserts that it believed Dr. Holland qualified as a fact witness and that it properly disclosed him in that capacity. The court has already addressed and rejected that argument for the reasons stated above. Moreover, "counsel's misinterpretation of the rule's requirements does not substantially justify [Defendant's] failure to comply." *Anderson v. Bristol, Inc.*, 936 F. Supp. 2d 1039, 1061 (S.D. Iowa 2013). Defendant cannot rely on misunderstanding to excuse noncompliance, particularly where the record demonstrates that it understood its disclosure obligations.

The court notes that Defendant has repeatedly identified Dr. Holland as an expert witness in prior litigation. *See, e.g., Harrison v. Union Pacific*, 2019 WL 418418 (D. Neb. Feb. 1, 2019), *Hopman v. Union Pacific*, 2020 WL 12654460 (E.D. Ark. Sept. 9, 2020). This history undermines any claim that Defendant misunderstood its disclosure obligations. Further, in cases where Defendant designated Dr. Holland as a fact witness under similar circumstances, the court routinely held that portions of his testimony constituted expert opinions requiring disclosure. For example, in *Christensen v. Union Pacific Railroad Co.*, 2025 WL 1192408 (D. Neb. Apr. 24, 2025), Union Pacific listed Dr. Holland as a fact witness in its initial disclosures. Dr. Holland provided expert opinions during his deposition, which plaintiff then sought to exclude due to the lack of expert disclosure. The court agreed that his opinions qualified as expert testimony, subject to Rule 26(a). Although the court denied the motion without prejudice due to insufficient

information on the record, it expressly permitted reassertion if Union Pacific later sought to present expert testimony from Dr. Holland "on a motion, at a hearing, or at a trial." *Id.*; *see also Hurd v. Union Pacific Railroad Co.*, 2025 WL 713516 (D. Neb. March 4, 2025) (Dr. Holland qualified as a hybrid witness requiring expert disclosures under Fed.R.Civ.P. 26(a)(2)(C)); *Johnson v. Union Pacific Railroad Co.*, 2025 WL 833235 (D. Neb. March 17, 2025) (same). Taken together, the record shows that Defendant lacks substantial justification for its noncompliance. This factor supports the imposition of sanctions.

### 2. Surprise and Prejudice

The second factor weighs in favor of Defendant, although only slightly. While the timing of the disclosure was improper, Plaintiff deposed Dr. Holland with the knowledge of his challenged opinions and does not contend that additional discovery is necessary to address them. The prejudice is therefore limited. Defendant also identified Dr. Holland in its initial disclosures and indicated that he would testify regarding Union Pacific's FFD policies. Plaintiff further acknowledged in his complaint that Defendant relied on FMCSA guidelines in crafting those policies. (Filing No. 1, at para. 27). Again, Dr. Holland is certainly no stranger to the parties here, as he frequently appears as an expert witness for Union Pacific in similar litigation.

Nevertheless, these circumstances do not relieve Defendant of its obligation to comply with Rule 26 in this case. As the Eighth Circuit cautioned, "[t]he expert witness disclosure requirements would be rendered meaningless if a party could ignore them and then claim that the nondisclosure was harmless because the other party should have read between the lines. Moreover, parties ... are entitled to presume that opposing parties will comply with the Rules of Civil Procedure and that experts will be properly disclosed in accordance with the rules." *Vanderberg*, 906 F.3d at 704.

Although Plaintiff likely anticipated the substance of Dr. Holland's testimony, Defendant knew from prior rulings that courts classify portions of his testimony as expert opinion requiring disclosure. Despite that knowledge, Defendant chose not to disclose him

11

as an expert here. *See Hurd,* 2025 WL 713516; *Johnson,* 2025 WL 833235. The court agrees that Plaintiff should not have to speculate whether Dr. Holland will offer expert opinions at trial. The rules require clarity, not guesswork.

### 3. Extent and Importance

As to the remaining two factors (i.e., the extent to which allowing the information may disrupt the order and efficiency of trial and the importance of the testimony), the court finds these weigh in favor of a tailored exclusion. Trial is scheduled for August 10, 2026, and a dispositive motion has now been filed. As previously noted, the deposition proceeded as scheduled after a brief delay. Neither party seeks to reopen discovery or further delay the case. Allowing properly limited testimony will not disrupt the orderly progression of trial. This factor therefore weighs against the most severe sanction.

The importance of the testimony, however, cuts both ways. Dr. Holland drafted, approved, and enforced the FFD policy at issue. Plaintiff's claim centers on Defendant's enforcement of that policy and the resulting loss of his employment. (*See* Filing No. 1). It is clear that Defendant intends to rely on Dr. Holland's testimony regarding "Union Pacific's FFD policies and procedures, including the basis for implementing those policies and procedures." (Filing No. 81, at p. 1). At the same time, it was Dr. Charbonneau who made Plaintiff's initial FFD determination, not Dr. Holland. Dr. Holland reviewed that determination only after Plaintiff requested reconsideration. In addition, Union Pacific has other evidence and witnesses to support these important facts. In particular, Union Pacific retained and properly disclosed Dr. T. Pierre Fayad as an expert who will testify regarding Plaintiff's medical condition, ability to return to work, and other related FFD issues. Because alternative sources of testimony exist to address the creation, justification, and application of the FFD policies, excluding Dr. Holland's expert opinions will not deprive Defendant of the ability to present its defense.

## IV.    CONCLUSION

After weighing these factors carefully, the court declines to exclude Dr. Holland's testimony in its entirety. Defendant properly disclosed him as a fact witness, and complete exclusion would be disproportionate. However, Rule 37(c)(1) requires meaningful consequences when disclosure obligations are ignored. The court will therefore limit Dr. Holland's testimony to factual matters within his personal knowledge. He may testify regarding factual historical events that motivated changes in Union Pacific's policies and his participation in drafting and finalizing those policies, which are provided in Paragraphs 1-14, 16-17, and 21-23 of his Amended Declaration. (Filing No. 77-4).

The court will exclude, however, any opinions that rely on specialized medical knowledge that should have been disclosed under Rule 26(a)(2)(C). Dr. Holland may not offer testimony that interprets medical literature, quantifies seizure or stroke risk, explains clinical predictors of future seizures, or otherwise applies medical expertise to justify the FFD restrictions imposed on Plaintiff, including those provided in Paragraphs 15, 18-20, and 24-26 of his Amended Declaration, and those additional and related opinions raised in his deposition. This limitation both enforces Rule 26 and protects Plaintiff from unfair surprise, while preserving the orderly progression of trial.

For these reasons,

IT IS ORDERED that Plaintiff's Motion to Exclude Dr. Holland is granted in part as set forth herein. (Filing No. 74).

Dated this 25th day of February, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge

13